UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SAFAVIEH INTL, LLC,

                      Plaintiff,

  -against-                                         No. 23 Civ. 3960 (CM)

CHENGDU JUNSEN FENGRUI TECHNOLOGY CO,
LTD.-TAO SHEN and DOES 1-10,

                      Defendants.
------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**

McMahon, J.:

This ex parte application for an order authorizing alternative service arises in connection with a dispute between two rug merchants.

Plaintiff Safavieh Intl, LLC ("Safavieh") is a New York designer rug company that has copyright registrations for a number of its rug designs. It sells its rugs on various websites, including the online marketplace Amazon. Defendant Chengdu Junsen Fengrui Technology Co, Ltd.-Tao Shen ("Chengdu") is a Chinese rug dealer that also sells its goods in the United States through Amazon. Defendants Does 1-10 are the unknown officers, employees and/or agents of Chengdu.

Starting in or around September 2022, Chengdu began to sell rugs on Amazon under the brand name "Wonnitar." Plaintiff claims these rugs are substantially similar in appearance and design to certain of Safavieh's copyrighted rug designs. Sometime prior to April 5, 2023, Plaintiff sent a takedown notice to Amazon, seeking the removal of all listings that appeared to infringe Safavieh's designs, pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512

1

(the "DMCA"). On April 5, 2023, Safavieh received an email from Amazon stating that it had received a counter-notice ("Counter-Notice") from Chengdu challenging the removal of the material identified in the notice of infringement.

In the Counter-Notice, Chengdu made the following representations:

(I) "I[1] am located outside of the United States and I consent to the jurisdiction of any judicial district in which Amazon may be found."

(II) "I agree to accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person."

On May 11, 2023, Plaintiff filed the instant complaint, asserting one count of copyright infringement and seeking injunctive relief and damages. Less than a week later, Plaintiff filed its motion for an order to show cause authorizing alternative service of its complaint on Defendants through the email address provided in the Counter-Notice.

In essence, Plaintiff argues that it should be able to serve Defendants by email because it would be "extremely difficult and time-consuming" to serve them in China pursuant to the methods stated in the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention" or "Convention").

Unfortunately, Plaintiff is stuck with "extremely difficult and time-consuming."

There are three requirements for establishing personal jurisdiction over a defendant. "First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective.... Third, the exercise of personal jurisdiction must comport with constitutional

---

[1] The pronoun "I" in this instance refers specifically to the entity that filed the counter-notice and provided its contact information, which is "Chengdu Junsen Fengrui Technology Co, Ltd.-Tao Shen." (Dkt. No. 11-1 at 2). That entity is the named defendant in this lawsuit.

due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 673 F.3d 50, 59–60 (2d Cir. 2012).

Plaintiff argues that Defendants have consented to this court's jurisdiction because Chengdu consented to the jurisdiction of "any judicial district court in which Amazon may be found" and Amazon, as a national business doing business in every judicial district of the United States, may be found in the Southern District of New York. Certainly that appears to be the case; it says so in the Counter-Notice, and Chengdu would have to file a special appearance to contest Safavieh's prima facie showing of consent.[2]

But consent to jurisdiction is not enough. Before a court can take cognizance of a claim against a particular defendant, that defendant must be properly served with process. Plaintiff's proposed method for serving the Defendants would not effect proper service.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation omitted). Plaintiff argues that Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 4(e)(1) authorizes service on an individual according to state law, and that New York state law, specifically New York Civil Practice Law and Rules ("CPLR") § 308(f), allows for alternative service if service is otherwise impracticable by the methods contemplated by the rule. While Plaintiff knows the business address of the Defendant Chengdu, it argues that all of the methods authorized by CPLR Section 308 are impracticable because all Defendants are in China. Thus, it asks this court to allow it to serve Defendants via the email address provided in the Counter-Notice. Plaintiff further argues that service by email is appropriate because the Chengdu consented to service of process via email. Finally, Plaintiff

---

[2] Whether Chengdu's consent also qualifies as consent to jurisdiction on behalf of its unnamed employees, agents and officers is another matter entirely, but not one that the court needs to address now.

3

contends that this court may, in its discretion, authorize service be email pursuant to Fed. R. Civ. P. 4(f)(3).

None of these arguments persuades.

First, Fed. R. Civ. P. 4(e)(1) is not the applicable rule of service here. Fed. R. Civ. P. 4(e) governs service of process on an individual within a judicial district of the United States. But Chengdu is a corporation, not an individual.[3] Fed. R. Civ. P. 4(h) governs service on a corporation. Under Rule 4(h), a corporation "at a place not within any judicial district of the United States," (i.e., a corporation in a foreign country) must be served in any manner authorized by Rule 4(f), except personal delivery. Fed. R. Civ. P. 4(h)(2). Plaintiff wishes to serve Defendants in China, so it must do so in accordance with Fed. R. Civ. P. 4(f), not Fed. R. Civ. P. 4(e).

Second, in the Counter-Notice, Chengdu did not agree to accept service via email. It has only consented to "accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person." This is consent to accept service effected by a particular person (Safavieh), not consent to accept service in a particular manner (via email).

Third, and determinative, Chengdu could not consent to service via email unless email service were permissible under the Hague Convention. It is not.

"[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). It specifically applies to service on foreign citizens in signatory countries, except "where the address of the person to be served with the document is not known." *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (citing

---

[3] Plaintiff's repeated references to CPLR § 308 – service on an individual – also fails to take into account that the relevant provision for service on a corporation like Chengdu is CPLR § 311, not CPLR § 308.

4

Hague Convention art. 1) (internal quotations omitted). Both China and the United States are parties to the Hague Convention, so the Convention applies to this action. *See* The World Organisation for Cross-border Co-operation in Civil and Commercial Matters, HCCH Members, available at https://www.hcch.net/en/states/hcch-members (last visited May 18, 2023). This means that service may only be effected pursuant to the provisions of that Convention, as long as the address of the person to be served with the document is known.

In this case the address of the only named defendant (Chengdu) is known – it is contained in the Counter-Notice. Plaintiff concedes on the face of its complaint that a physical address was provided for the company in its Counter-Notice — Sichuan Province Chengdu No. 32, No. 962, Qianlong Road Wuhou District, Chengdu, Sichuan Province. Therefore, the Convention by its terms governs the propriety of service of process on Chengdu, a defendant located in China.

Under the Hague Convention, use of Convention procedures is *mandatory* if documents have to be transmitted abroad to effect service. Fed. R. Civ. P. Rule 4 Advisory Committee Note—1993 Amendment. Since the complaint and related documents still need to be transmitted to Chengdu in *China*, service must be effected according to Convention procedures. A Defendant such as Chengdu could not agree to a manner of service that bypasses those procedures.

Finally, Plaintiff asks this court to allow alternative service via email pursuant to Rule 4(f)(3), rather than require it to serve Defendants pursuant to Rule 4(f)(1) (the procedures affirmatively authorized by the Hague Convention). However, alternative service, pursuant to Fed. R. Civ. P. 4(f)(3), is not available at this stage of litigation.

Fed. R. Civ. P 4(f)(1) authorizes service of foreign defendants by any "internationally agreed means of service that is reasonably calculated to give notice," such as the Hague Convention. In general, the Hague Convention permits multiple methods of service:

> "First, an applicant can send a request for service to a receiving country's central authority, an entity that every signatory to the Convention must establish. . . . Second, the Convention permits alternative methods of service unless the receiving country objects. These methods include service by diplomatic and consular agents, service through consular channels, service on judicial officers in the receiving country, and direct service 'by postal channels.'"

*Smart Study Co. v. Acuteye-Us*, 2022 WL 2872297, at *7 (S.D.N.Y. July 21, 2022) (quoting *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020) (cleaned up). However, China has specifically objected to many of these methods of service, including service "by postal channels." *See* China – Central Authority & Practical Information, Hague Conference on Private Int'l Law, https://www.hcch.net/en/states/en/states/authorities/details3/?aid=243 (last visited May 19, 2023).

The only method of service on defendants in China that is affirmatively authorized by the Convention is submission of requests to serve to China's central authority; a method that, as Plaintiff notes, can take six months to execute. *Id.* For this reason, Plaintiff asks this court to allow it to serve Defendants via email, pursuant to Fed. R. Civ. P. 4(f)(3), which allows service "by other means not prohibited by international agreement." Since "email," is not mentioned anywhere in the Convention—which long predates the advent of email—Plaintiff contends that it is not prohibited by the Convention, even where a signatory country has objected to service by postal channels.

I disagree.

In recent years, my colleagues in this Circuit have split over whether e-mail service is permitted where signatories to the Hague Convention object to service by postal channels. I am inclined to agree with the more recent cases, which hold that service via email on litigants located in China is not permitted by the Hague Convention.

6

Since 2015, starting with a decision written by the Honorable Jed S. Rakoff, *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015)—cited approvingly by Plaintiff—some courts in this Circuit have reasoned that service by email of foreign defendants is permitted under the Hague Convention, because a signatory country's objection to service by "postal channels" does not expressly bar service by email. *Smart Study,* 2022 WL 2872297, at *9 (collecting cases). Specifically, *Sulzer* and its progeny hold that the (1) the term "postal channels" does not explicitly encompass email, so any objection to service by postal channels does not bar service by email, and (2) since email is not otherwise expressly barred, it is a permissible form of service. *Id*.

However, recently, courts in this Circuit have begun to shift the other way. The Honorable Gregory H. Woods, in a thorough and well-researched decision — one that draws on an amicus brief filed by Professor Benjamin Liebman, the "Robert L. Lieff Professor of Law and Director of Columbia Law School's Hong Yen Chang Center for Chinese Legal Studies" and Geoffrey Sant, a partner and co-chair of Pillsbury Winthrop Shaw Pittman LLP's China Practice —determined that service of defendants in China by email was prohibited under the Hague Convention. *Smart Study,* 2022 WL 2872297, at *8.[4]

In light of the recent Supreme Court decision *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017)—decided after *Sulzer*—the *Smart Study* court determined that the specific methods of service outlined in the Hague Convention are exclusive, and any methods not explicitly authorized are forbidden. *Smart Study,* 2022 WL 2872297, at *7. Or, as the Supreme Court put it,

---

[4] After the *Smart Study* court held that service by email was improper, the plaintiff filed an interlocutory appeal of the order in the Second Circuit. However, the Second Circuit determined that it lacked appellate jurisdiction over the district court's order because the order was neither a final decision nor an interlocutory order appealable under 28 U.S.C. § 1292(a)(1).

"the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Smart Study Co.*, 2022 WL 2872297, at *8 (quoting *Water Splash*, 581 U.S. at 273).

Judge Woods then went on to hold that, regardless of whether email is a permissible method of service under the Convention procedures, China's specific objection to service by postal channels precludes service by email. As Judge Woods determined, with the assistance of the amici, Chinese authorities have stated that China's objection to service by postal channels includes an implicit objection to service by email. *Id.* at *9. Indeed, China's rules of civil procedure affirmatively prohibit foreign agencies and individuals from serving documents through any channels other than those authorized in the Hague Convention. *Id.* at *11. As a result, service on defendants in China via email is prohibited under the Hague Convention and would not be proper under Rules 4(f)(1), 4(f)(2)(c), or (4)(f)(3).[5] The *Smart Study* court concluded that the plaintiff must serve the defendants via the Chinese central authority, the only method authorized by the Hague Convention.

Many courts in this circuit have since adopted the court's holding in *Smart Study*. *See, e.g.*, *Moonbug Ent. Ltd. v. www.blippimerch.com*, 2023 WL 2730107, at *3 (S.D.N.Y. Mar. 28, 2023); *Kadmon Corp., LLC v. Ltd. Liab. Co. Oncon*, 2023 WL 2346340, at *4 (S.D.N.Y. Mar. 3, 2023); *Kyjen Co., LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A to Complaint*, 2023 WL 2330429, at *1 (S.D.N.Y. Mar. 2, 2023); *Schluter Sys., L.P. v. Sanven Corp.*, 2023 WL 130888, at *5 (N.D.N.Y.

---

[5] Fed. R. Civ. P. 4(f)(2)(c) provides for service by a means reasonably calculated to give notice unless prohibited by the foreign country's law. Since the Chinese rules of civil procedure prohibit service via channels not authorized by the Hague Convention, email service would not be proper under Rule 4(f)(2)(c). *Smart Study Co.*, 2022 WL 2872297, at *11.

Jan. 6, 2023); *Shenzhen Chengront Tech. Co. v. Besign Direct*, 2022 WL 17741496, at *2 (S.D.N.Y. Dec. 9, 2022).[6] With all respect to those whose decisions came before Judge Woods handed down his magnum opus, I believe that *Smart Study* offers the correct interpretation of the Hague Convention in light of recent Supreme Court precedent.

Moreover, *Smart Study*'s holding makes the most sense. As the *Smart Study* court opined, the Hague Convention "is meant to set forth simple and certain methods of service that can be used to serve foreign litigants." *Smart Study Co. v. Acuteye-Us*, 2022 WL 2872297, at *10. Therefore, "to infer that the Convention's silence as to a particular method [of service] equates to an implied permission to use virtually any method of service not proscribed by the Convention contravenes that purpose." *Id.* It seems beyond the remit of this court, and against the principles of international comity, to decide that Chinese defendants can be served by email simply because an international treaty does not mention this post-treaty technological development—especially given China's recent pronouncement that the method is impermissible.

However, I emphasize that this is not necessarily my final answer. "When courts have allowed for alternative service, they have done so when 'plaintiffs have been unable, despite *diligent efforts*, to serve the defendant in the [foreign country] according to the Hague [] Convention procedures.'" *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 398 (S.D.N.Y. 2014) (quoting *S.E.C. v. Shehyn*, 2008 WL 6150322, at *3 (S.D.N.Y. Nov. 26, 2008)) (alterations and emphasis in original). If Safavieh were to persuade this court that it was unable despite diligent efforts to effect Hague Convention service, then I would be free to consider other

---

[6] As my colleague, the Honorable Paul A. Engelmayer, observed in *Kelly Toys Holdings, LLC. v. Top Dep't Store*, 2022 WL 3701216, at *8 n.6 (S.D.N.Y. Aug. 26, 2022), Judge Woods' analysis also tracks that of courts in other districts. *See, e.g.*, *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020); *CRS Recovery, Inc. v. Laxton*, 2008 WL 11383537, at *2 (N.D. Cal. Jan. 8, 2008); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 2020 WL 5036085, at *8 (N.D. Cal. Aug. 19, 2020); *Luxottica Grp. S.p.A. v. P'ships & Unincorp. Assocs. Identified on Schedule "A,"* 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019).

methods of service. In particular, if it turns out that the address provided by Chengdu in the Counter-Notice is not an address where Chengdu can be served in accordance with the Hague Convention, I could authorize other means of service, because the Hague Convention applies only where the defendant's address is "known."

"Courts in this Circuit have found that an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Id.* (collecting cases). Safavieh makes no showing that it has exercised reasonable diligence to determine whether the address is or is not an appropriate address for service on Defendants. Reasonable diligence requires more than a "mere perusal of a defendant's storefront." *Smart Study,* 2022 WL 2872297, at *6. A plaintiff must make further efforts, such as investigating likely physical addresses and determining whether they are associated with the defendants. *See Kelly Toys Holdings, LLC. v. Top Dep't Store*, 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022). There is no evidence in the record that suggests Plaintiff has taken any steps to confirm or deny whether the physical address provided is appropriate for service — not even the bare minimum of calling the phone number provided in the Counter-Notice.

Therefore, Safavieh must begin the "extremely difficult and time-consuming" process of trying to serve Chengdu in accordance with Hague Convention rules. There is neither any end-run around the rules of procedure nor any exigent circumstances exception to Rule 4. *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019). And if there were an exigent circumstances exception, Plaintiff fails to identify any "exigent circumstances" that would justify an order permitting alternative service. If, after making the necessary effort, it is able to convince the court that reasonable diligence has failed to uncover a

10

legitimate physical address in China for Chengdu, Plaintiff will be free to renew its application for leave to effect service via email. Until that happens, Plaintiff's request for leave to serve by alternative means is denied without prejudice.

## CONCLUSION

This constitutes the decision and order of the court. It is a written opinion. The Clerk of Court is respectfully directed to terminate the motion at Docket Number 10.

Dated: June 13, 2023

_____
U.S.D.J.

BY ECF TO ALL COUNSEL