USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/20/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SAFAVIEH INTL, LLC,

        Plaintiff,

-against-

CHENGDU JUNSEN FENGRUI
TECHNOLOGY CO,
LTD.-TAO SHEN and DOES 1 through 10,

        Defendants.

------------------------------------------------------------X

No. 1:23-cv-03960-CM

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE THE DEFAULT JUDGMENT

McMahon, J.:

### Background

Plaintiff Safavieh Intl, LLC ("Plaintiff" or "Safavieh") alleges that Defendant Chengdu Junsen Fengrui Technology Co, Ltd.-Tao Shen ("Defendant" or "Chengdu Junsen") manufactured, sold, and distributed rugs designed to look substantially similar to rugs designed and sold by Safavieh. Compl. ¶¶ 17, 19. Safavieh maintains active copyright registrations for the relevant rug designs. *Id.* ¶ 10. On May 11, 2023, Safavieh filed a Complaint alleging that Chengdu Junsen's sale of substantially similarly designed rugs violated the copyright laws of the United States, namely 17 U.S.C. § 501. *Id.* ¶ 26.

On January 17, 2024, the Court entered a default judgment against Chengdu Junsen. Dkt. No. 33.

On July 15, 2024, Chengdu Junsen moved to vacate the default judgment. Dkt. No. 37.

1

The Court finds that (1) Chengdu Junsen did not willfully default, (2) Chengdu Junsen has potentially meritorious defenses to Safavieh's claims, and (3) vacating the default judgment would not prejudice Safavieh. The Court thus GRANTS Chengdu Junsen's Motion to Set Aside the Default Judgment.

I. **Statement of Facts**

Plaintiff Safavieh is a New York limited liability company that designs, advertises, and sells rugs (1) on its own website located at www.safavieh.com, and (2) on other websites including Amazon.com. Compl. ¶¶ 3, 10, 13.

Safavieh created two designs ("Safavieh Designs") and registered its copyright in those designs with the U.S. Copyright Office effective on July 27, 2016. *Id.* ¶ 10.

Defendant Chengdu Junsen is a Chinese limited company located in China that sells rugs through Amazon.com. *Id.* ¶¶ 4, 14, 15. The Complaint describes Defendants Does 1 through 10 ("Does" or, together with Chengdu Junsen, "Defendants") as the "moving, active and conscious forces behind [] [Chengdu Junsen]'s copyright, trademark and patent infringement." *Id.* ¶ 5. To date no John Does have been identified.

In or around September 2022, Chengdu Junsen imported, sold, and distributed rugs through Amazon.com under the brand name "Wonnitar." *Id.* ¶ 16. Chengdu Junsen claims to have purchased a license that allowed it to sell certain rugs from Beijing Zcool Technology Co. Ltd. ("Zcool"), an authorized distributor of Shutterstock, Inc. ("Shutterstock"). Dkt. No. 38., Ex. A-2, Ex. A-3. The rugs Chengdu Junsen sold include two with designs that Safavieh claims infringe its copyrights. Compl. ¶ 17.

Safavieh sent Amazon a takedown notice to enforce its copyright in the rug designs. *Id.* ¶ 8. Chengdu Junsen sent a counter-notice dated April 6, 2023, alleging that it did not infringe

Safavieh's copyright. *Id.*; Dkt. No. 39, Ex. 1. In the counter-notice, Chengdu Junsen listed its email as junsen336@163.com. Dkt. No. 39, Ex. 1.

## II. **Procedural History**

On May 11, 2023, Safavieh filed a Complaint in the Southern District of New York, asserting a claim against Chengdu Junsen for copyright infringement. Compl. ¶¶ 24–30. In its Complaint, Safavieh sought relief including but not limited to (1) a permanent injunction enjoining Chengdu Junsen from designing or selling any rugs that are substantially similar to the Safavieh Designs and (2) either compensatory damages to be determined at trial, or statutory damages in the amount of $150,000 per instance of infringement — a total of $300,000. *Id.* pp. 6–7.

On May 17, 2023, Safavieh filed a Motion for Alternative Service authorizing Safavieh to send the Complaint to Chengdu Junsen via email. Dkt. No. 10. On June 13, 2023, the Court denied Safavieh's motion, stating that Safavieh had made no effort to serve process through ordinary channels. Dkt. No. 14.

On July 14, 2023, Safavieh moved again for permission to serve the Complaint via email. Dkt. No. 15. As evidence, Safavieh submitted documentation that Safavieh was unable to locate a physical address for Chengdu Junsen at which process could be left. Dkt No. 16; Dkt. No. 18, ¶¶ 5, 7; Dkt. No 19, ¶ 7. On September 5, 2023, the Court granted the motion and allowed Safavieh to serve Chengdu Junsen via email. Dkt. No. 21. The next day, September 6, 2023, Safavieh sent an email serving process to Chengdu Junsen at junsen336@163.com. Dkt. No. 22, Ex. A.

Chengdu Junsen did not appear in response to the email. Dkt. No. 29, Ex. 1, ¶ 6.

On October 2, 2023, Safavieh applied to the Office of the Clerk of the Court for a certificate of default, which the Clerk issued the next day. Dkt. No. 24–28. This was less than 30 days after service of process, which violated an Individual Rule of this Court.[1]

On October 13, 2023, Safavieh filed a Motion for a Default Judgment. Dkt. No. 29. The motion was served on Chengdu Junsen via email. Doc. No. 39, Ex. 2.

On January 17, 2024, the Court granted Safavieh's Motion for a Default Judgment against Defendants and awarded Safavieh $300,000 in statutory damages, a permanent injunction against further infringement, and attorneys' fees. Dkt. No. 33, pp. 3–4.

On February 22, 2024, Chengdu Junsen received a notice from Amazon.com that its Amazon account had been deactivated and that its balance was on hold because of a "Temporary Restraining Order." Dkt. No. 38, Ex. A, ¶ 6. Chengdu Junsen asserts that it petitioned Amazon to rectify the matter, as it was unfamiliar with United States law. *Id.* ¶ 6. Sometime in early April 2024, Amazon transferred around $200,000 out of Chengdu Junsen's Amazon account to Safavieh to comply with the default judgment. *Id.* ¶ 8.

At this point, Chengdu Junsen searched the junsen336@163.com inbox and discovered the emails from Safavieh's counsel serving both process and the default judgment motion. *Id.* ¶ 9. Chengdu Junsen immediately began searching for U.S. counsel. *Id.* ¶ 10. Chengdu Junsen claims that the email address had not been checked during the preceding months because the employee responsible for the Wonnitar storefront and the associated email address was on an extended maternity leave between May 13, 2023, and February 17, 2024. *Id.* ¶ 5. Chengdu Junsen also avers that the email address was solely used to register for Amazon.com and to receive communications

---

[1] My individual rules require parties to wait at least 30 days following service before seeking a certificate of default. *See* Individual Practices and Procedures – Judge Colleen McMahon, 11 (2024) https://www.nysd.uscourts.gov/sites/default/files/practice_documents/CM%20McMahon%20Individual%20Rules.Rev_.2024.pdf. Safavieh acknowledges the error and apologizes to the court.

4

from Amazon. *Id.* ¶¶ 3–4. Chengdu Junsen receives "dozens, if not hundreds" of emails from Amazon.com per day, which are sent both to the email inbox and over Amazon.com's user portal. *Id.* ¶ 4. Chengdu Junsen does not regularly check the email address' inbox; rather, it monitors its communications with Amazon.com over the user portal. *Id.* Emails sent by parties other than Amazon (such as counsel for Plaintiff) to junsen336@163.com do not appear on the Amazon.com user portal, and so might be overlooked.

On April 26, 2024, Chengdu Junsen retained Timothy T. Wang and Tong Jin as U.S. counsel. *Id.* ¶ 11. On July 15, 2024, Chengdu Junsen filed this Motion to Set Aside the Default Judgment. Dkt. No. 38.

## Discussion

### I. Standard for Vacating Entry of Default

The clerk of the court must enter default, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). However, a court can set aside an entry of default for good cause, and may even set aside a final default judgment. Fed. R. Civ. P. 55(c). To vacate a final default judgment, the defaulting party must demonstrate that the default was due to "(1) mistake, inadvertence, surprise, or *excusable* neglect… or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b) (emphasis added).

The Second Circuit ruled that courts should consider three factors when determining whether there is good cause to vacate an entry of default: (1) whether the default was willful; (2) whether there exists a meritorious defense of the defaulted claims, and (3) the level of prejudice that the non-defaulting party might suffer should relief be granted. *W.B. David & Co., Inc. v. De Beers Centenary AG*, 507 Fed. Appx. 67, 69 (2d Cir. 2013); *Enron Oil Corp. v. Diakuhara*, 10

F.3d 90, 96 (2d Cir. 1993). Courts can also consider equitable factors, such as "whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96.

When determining whether good cause exists, courts must acknowledge that the Second Circuit strongly prefers that disputes be resolved on the merits. *Digilytic Int'l FZE v. Alchemy Fin., Inc.*, 2023 WL 4288154, at *5 (S.D.N.Y. June 30, 2023) (citing *Enron Oil Corp.*, 10 F.3d at 95). In addition, when doubt exists as to whether the court should grant or vacate a default, the court is supposed to resolve that doubt in favor of the defaulting party, so as to promote the resolution of disputes on their merits. *Powerserve Int'l Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (citing *Enron Oil Corp.*, 10 F.3d at 96).

Ultimately, the Second Circuit leaves the decision to vacate an entry of default to the sound discretion of the district court. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citing *Enron Oil Corp.*, 10 F.3d at 95).

## II. The Court Vacates the Default Judgment against Chengdu Junsen

### A. Chengdu Junsen Did Not Act Willfully

Willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d at 738. In determining whether a defaulting party acted willfully, the court may excuse inadvertent mistakes or negligence, as opposed to egregious or unexplained conduct. *Id.*; *See Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Courts can infer willful conduct when a defendant never claims "that they failed to receive actual notice of the claims against them." *Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994). However, "the relevant inquiry for determining willfulness is the defaulting party's actions after it became aware of the existence of the litigation or entry of default." *Haran v. Orange Bus. Servs. Inc.*, 2022

6

WL 2306945, at *2 (S.D.N.Y. June 27, 2022) (quoting *In re FKF 3, LLC*, 501 B.R. 491, 502 (S.D.N.Y. 2013)).

Chengdu Junsen argues that it never received actual notice of the claims against it, despite admitting that Safavieh both served the summons and complaint and sent the notice of motion for default judgment to an email address provided by Chengdu Junsen — at junsen336@163.com. Dkt. No. 38, Ex. A. ¶ 9. Chengdu Junsen states by way of explanation that it uses this email to communicate with Amazon, not with third parties, and that it does not regularly check emails received at junsen336@163.com, relying instead on Amazon's user portal to manage correspondence with Amazon. *Id*., Ex. A., ¶ 4. As noted, Chengdu Junsen also states that the employee in charge of managing the junsen336@163.com inbox was away on maternity leave from May 13, 2023, to February 17, 2024. *Id.*, Ex. A., ¶ 5.

Chengdu Junsen does not explain why it allowed the email inbox to remain unsupervised even though it had provided that email as its point of contact in connection with an active dispute involving the takedown notice that Safavieh had filed with Amazon. Compl. ¶ 8. In Chengdu Junsen's counter-notice, dated April 4, 2023, Chengdu Junsen provided the junsen336@163.com email address for future communications. Dkt. No. 39, Ex. 1. One would have expected Chengdu Junsen, knowing of the pendency of this dispute, to make sure that the email address was monitored at all times. Chengdu Junsen acted carelessly by failing to ensure that the email inbox was properly supervised until the dispute was resolved; it was foreseeable that Safavieh would continue to communicate about the ongoing dispute by sending messages to the provided email address.

Nonetheless, it does not appear that Chengdu Junsen's conduct qualifies as willful as that term is defined in default judgment cases in this Circuit. Indeed, courts in this Circuit have excused far more egregiously negligent conduct than the conduct at issue in this case.

For example, in *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996), the Second Circuit found that the defendant failed to respond to the Complaint even though notices of default — which were received — were "routinely filed by [the defendant's] office manager who assumed that the case had been assigned and was being diligently handled by a staff attorney." The District Court found this conduct grossly negligent, but not willful. *Id.* at 61. The Second Circuit affirmed, noting while "gross negligence can weigh against the party seeking relief from a default judgment," it "does not necessarily preclude relief." *Id.* at 61.

To illustrate this point, in *Thummala v. City of New York*, 1996 WL 546289 (E.D.N.Y. September 19, 1996), my colleague at the Eastern District of New York found that a defendant's gross negligence precluded vacating a default judgment. In *Thummala*, the defendant's attorney learned about the plaintiff's pending Motion for a Default Judgment in June 1995, but failed to act until June 1996. *Id.* at *3. The Eastern District distinguished *Thummala* from *Am. Alliance Ins. Co.* by saying that "[t]he court in [*Am. Alliance Ins.Co.*] found that defense counsel was grossly negligent… but concluded that, based on the other factors, the default judgment should be vacated." 1996 WL 546289, at *3. In particular, the Eastern District noted that the year's delay in filing led the court to rule that the defendant in *Thummala*'s behavior was "more egregious" than that of the defendant in *Am. Alliance Ins. Co.* 1996 WL 546289, at *3.

Finally, in *Durso v. Modern Food Ctr., Inc.*, 2019 WL 2150424 (S.D.N.Y. May 17, 2019), the defendant's attorney, although aware of the case, stated that he failed to learn about the Motion for a Default Judgment due to numerous sick family members, staff turnover, and an ill office manager. *Id.* at *6. Furthermore, after discovering the default judgment, the defendant's attorney in *Durso* repeatedly misfiled documents meant to combat the default judgment. *Id.* at *2–4. The court in *Durso* determined that the defendant's attorney's actions were not willful, but "perhaps

8

better characterized as grossly negligent rather than indicating a deliberate plan or strategic decision to fail to answer the complaint." *Id.* at *7. Although the court in *Durso* denied the defendant's Motion to Vacate the Default Judgment, it noted that that while the "conduct was not willful, and plaintiffs would be subject to relatively minimal prejudice, defendants [did] not point[] to the existence of any meritorious defense." *Id.* at *13. This indicates that the defendant's conduct, although grossly negligent, did not weigh against vacating the default judgment. *See id.*

Applying the logic employed in these cases, Chengdu Junsen did not act willfully. Chengdu Junsen states that it failed to monitor the email account used to controvert Safavieh's takedown notice due to an employee's maternity leave and company policy preferring the Amazon.com user portal over the junsen336@163.com email account. Dkt. No. 38, Ex. A, ¶¶ 4, 5. As was the case in *Durso*, Chengdu Junsen's behavior, while hardly excusable, does not indicate any plan or decision to attempt to avoid learning about or answering the Complaint. Moreover, there is no evidence that Chengdu Junsen knew of the existence of this lawsuit until after the Court filed the default judgment. Dkt. No. 38, Ex. A, ¶ 7. Therefore, I conclude that Chengdu Junsen acted, at most, negligently, and not willfully.

Safavieh argues that the Court must deem Chengdu Junsen's failure to monitor the inbox as willful behavior because Chengdu Junsen confirmed junsen336@163.com as its email address when submitting its counter-notice to Safavieh's takedown notice, which made it a live matter that Chengdu Junsen had a duty to oversee. Dkt. No. 39, Ex. 1, p. 2. In making this argument, Safavieh relies on *Suazo v. Bryant Props., 769 LLC*, 2024 WL 967226 (S.D.N.Y. March 5, 2024), in which the Court determined that the defendant's failure to check its physical mail at one of its confirmed physical addresses did not excuse its failure to appear so as to justify vacating a default judgment. But in *Suazo*, there were several reasons why the court denied the motion to vacate the default: the

9

motion was time-barred, the defendant had employees at the premises where the mail was delivered, and the defendant held an incorrect and unjustified belief that the court instituted a moratorium on any non-urgent legal actions during the COVID-19 pandemic. *Id.* Here, Chengdu Junsen acted timely pursuant to Fed. R. Civ. P. 60(c) and Safavieh did not mail notice to any physical address. While I agree that Chengdu Junsen should have assigned someone to monitor the [junsen336@163.com](mailto:junsen336@163.com) email inbox in the absence of its usual custodian — especially because it had recently given that email address as a point of contact in connection with the active Amazon.com dispute — I note that Chengdu Junsen promptly sought legal counsel once it learned of the default judgment. Dkt. No. 38, Ex. A, ¶¶ 10–11. Unlike in *Thummala*, there was no unexplained delay of a year once Defendant became aware of the pendency of litigation. Safavieh notes that one of my colleagues in the Eastern District of New York held that, when defendants lack an "adequate excuse for receiving multiple mailings," delaying for three months before filing a motion to vacate a default judgment weighs against granting the motion. *Trustees of the Local 7 Tile Indus. Welfare Fund v. Gibraltar Contr. Inc.*, 2021 WL 1207123, at *3–4. (E.D.N.Y. March 31, 2021). But, in *Trustees*, the defendant conceded that it had no excuse for not receiving any mailings, *id.*, while in this case, Chengdu Junsen has offered explanations for why messages sent to this particular inbox went unnoticed for nine months. Dkt. No. 38, Ex. A, ¶ 5.

    More concerning is the fact that, once Chengdu Junsen retained counsel, its attorneys took almost three months to file this Motion to Set Aside the Default Judgment after Chengdu Junsen learned of the default judgment "[a]round early April 2024." Dkt. No. 38, Ex. A, ¶ 8. But Safavieh admits that Chengdu Junsen's attorneys informed Safavieh of its intention to file this Motion to Set Aside the Default Judgment on June 27, 2024, but chose to wait until July 15, 2024, to accommodate for Safavieh's attorney's vacation. Dkt. No. 41, pp. 9–10. This is unlike the

defendant in *Trustees*, 2021 WL 1207123, at *2, who claimed it learned about the lawsuit on October 9, 2019, but, with no excuse, failed to file a motion to vacate the default judgment until January 30, 2020. In any event, there is no evidence that Chengdu Junsen instructed its new lawyers to wait before moving to vacate the default, so I am not inclined to tar the client with any lawyer's tardiness.

I acknowledge that the case is a close one; Safavieh's arguments for why Chengdu Junsen acted more than negligently by failing to cover for the missing employee are not unpersuasive. But, as noted above, in a close case, the court should resolve doubts in favor of the defaulting party, not the plaintiff. *Powerserve Int'l Inc.*, 239 F.3d at 514. Thus, I conclude that Chengdu Junsen's failure to check its email was, at most, negligent, not willful.

### B. Chengdu Junsen Raises Meritorious Defenses

A defense is meritorious "if it is good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co.*, 92 F.3d at 61. "The test of [] a [meritorious] defense [within the context of vacatur of the entry of default] is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98.

To establish copyright infringement, a valid copyright holder must demonstrate that "(1) the defendant has actually copied the plaintiff's work and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of [the] plaintiff's." *Hamil Am. Inc. v. GFI, Inc.*, 193 F.3d 92, 99 (2d Cir. 1999). Courts test for substantial similarity by determining whether an ordinary observer, unless he were predisposed to look for discrepancies, would overlook any discrepancies and regard the aesthetic appeal of both designs as the same. *Id.* at 100. To determine whether two designs are substantially similar, the factfinder

11

must examine the works' total concept and feel. *Hamil Am.*, 193 F.3d at 102. However, a copier's defense against allegations of copyright infringement by pointing out minor differences does not create a triable issue of material fact, and such a case may be decided on a summary judgment motion. *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992).

Here, Chengdu Junsen calls the court's attention to differences between its rugs and the Safavieh Designs. No. 38, pp. 7–9. Although I believe that Chengdu Junsen points to only minor differences, the issue of substantial similarity is typically one for the factfinder and can rarely be determined as a matter of law. *Warner Bros. v. Am. Broad. Companies, Inc*., 720 F.2d 231, 239 (2d Cir. 1983), Therefore, Chengdu Junsen raised a material issue of fact to be determined by a factfinder, and a potentially meritorious defense.

As an additional, affirmative defense, Chengdu Junsen states that it purchased a valid license for the Safavieh Designs from Zcool. Dkt. No. 38, Ex. A, ¶¶ 12–13; *See Foster v. Lee*, 93 F. Supp. 3d 223, 230–31 (S.D.N.Y. 2015). Safavieh asserts that Chengdu Junsen's defense fails because: (1) Safavieh never gave Shutterstock a license to sell through Zcool, and (2) Chengdu Junsen breached the Shutterstock license agreement by failing to make material changes to the design before marketing its rugs.

Questions about the validity of a license cannot be decided as a matter of law. *See Stern v. Lavender*, 319 F. Supp. 3d 650 (S.D.N.Y. 2018). Moreover, the Shutterstock license agreement that Safavieh alleges Chengdu Junsen breached is not the actual agreement between Shutterstock/Zcool and Chengdu Junsen, but merely a sample agreement found on Shutterstock's website. *See* Dkt. No. 39, Ex. 5. Therefore, there are questions of fact about the existence and content of the alleged licensing agreement, which, if found in Chengdu Junsen's favor, would constitute a complete defense from Safavieh's claims. *Foster*, 93 F. Supp. 3d at 230–31.

### C. Safavieh Will Not Be Prejudiced

Prejudice exists when a delay caused by the vacatur of default judgment "'may thwart plaintiff's recovery or remedy . . . [or] result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Delay, without more, is insufficient to establish prejudice. *Davis*, 713 F.2d at 916; *see also Gil v. Frantzis*, 2019 WL 5694074, at *11–12 (E.D.N.Y. August 20, 2019). In order to show prejudice, a plaintiff "must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Eng'g, P.C. v. Windermere Properties LLC*, 2013 WL 1809637, at *5 (S.D.N.Y. April 30, 2013).

Safavieh claims that it would be prejudiced if Chengdu Junsen continues to sell the rugs incorporating the Safavieh Designs. Chengdu Junsen claims that it will refrain from selling any of the rugs at issue pending litigation. However, if that representation proves hollow, Safavieh is free to seek a preliminary injunction against the further sale of offending rugs. In *Am. Metro. Enters. Of N.Y. v. Warner Bros. Records, Inc.*, 389 F.2d 903 (2d Cir. 1968), the Court granted a preliminary injunction in a copyright infringement lawsuit upon a prima facie showing that the defendant continuously infringed the copyright during the proceeding. I note that Safavieh has not moved for preliminary injunctive relief to date.

As an additional argument, Safavieh states that Chengdu Jensen's lack of assets in the United States indicates that Chengdu Jensen may sell the allegedly infringing rugs under a different name or storefront. Dkt. No. 41, p. 22. Safavieh presents no evidence to support this conjecture. Even if Safavieh had done so, this argument does not justify refusing to vacate the default

judgment. *See Sears Petroleum & Trans. Corp. v. Burgess Constr. Servs.*, 1997 U.S. Dist. LEXIS 13870 (N.D.N.Y. September 11, 1997).

The Court finds that there would be little to no prejudice against Safavieh if we vacate the default judgment.

### D. Equitable Considerations

Finally, on default, Safavieh sought and obtained the sum of $300,000.00, the maximum statutory damages available under 17 U.S.C. §504(c). When a defendant infringes on a plaintiff's copyright innocently, the Court can deem a judgment ordering the payment of the maximum amount in statutory damages as an unfair result, which the Court may then reduce. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2016 U.S. Dist. LEXIS 127307, at *10 (S.D.N.Y. September 19, 2016). Here, Chengdu Junsen asserts that it acted as, at most, an innocent infringer because it relied on Zcool's representations that Chengdu Junsen owned a valid license. Dkt. No. 38, Ex. A, ¶¶ 12–13. An award of the maximum statutory damages of $300,000.00 could constitute a harsh result under these circumstances, which further suggests that the better part of valor is to vacate the default and litigate this case.

### Conclusion

For the reasons discussed above, Chengdu Junsen's Motion to Set Aside the Default Judgment is GRANTED. Counsel are directed to file a consent Case Management Plan that completes all discovery no later than January 23, 2025, or to appear at a conference with the court on October 24, 2024, at 10:00am in Courtroom 24A, Moynihan Courthouse, 500 Pearl Street, New York, New York.

The Clerk of Court is respectfully directed to close open motions at Docket Number 37.

This constitutes the decision and order of the court. It is a written decision.

Dated: September 20, 2024

_____

U.S.D.J.

BY ECF TO ALL COUNSEL

15